IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────

RAFAEL MESSA,

                Plaintiff,

      v.                            Civil Action No.
                                        9:07-CV-0306 (DNH/DEP)

ROBERT K. WOODS, *et al.*,

                Defendants.

─────────────────────────────────────────

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

RAFAEL MESSA, *pro se*
99-A-1402
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

FOR DEFENDANTS:

ANDREW M. CUOMO           ADELE TAYLOR SCOTT, ESQ.
Attorney General of the State    Assistant Attorney General
   of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Rafael Messa, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights arising out of his incarceration.  In his complaint, plaintiff asserts that corrections officers in the prison in which he was housed at the relevant times subjected him to excessive force on two separate occasions and that medical staff personnel at the facility were deliberately indifferent to his serious medical needs in their failure to properly treat his resulting injuries. As relief, plaintiff seeks recovery of compensatory and punitive damages from each of the seven named defendants.

Currently pending before the court is defendants' motion for summary judgment dismissing plaintiff's claims against them.  In their motion, defendants argue that 1) certain of plaintiff's claims are subject to dismissal based upon his failure to exhaust available administrative remedies before commencing suit; 2) plaintiff's claims against the superintendent at the facility in which the relevant conduct occurred are subject to dismissal, based upon his lack of personal involvement; and 3) the remaining claims should be dismissed on the merits.  Having carefully

considered the record now before now before the court in light of

defendants' arguments and plaintiff's failure to properly oppose

defendants' motion, I recommend a finding that plaintiff's claims against

the facility superintendent be dismissed, and that portions of plaintiff's

remaining claims be dismissed for failure to exhaust available

administrative remedies, but that the balance of defendants' motion be

denied based upon the existence of triable, genuinely disputed issues of

material fact.

I.   BACKGROUND[1]

Plaintiff is a prison inmate entrusted to the care and custody of the

New York State Department of Correctional Services ("DOCS").  *See*

*generally* Complaint (Dkt. No. 1).  At the times relevant to his claims,

Messa was designated to the Upstate Correctional Facility ("Upstate") in

Malone, New York, and held in a special housing unit ("SHU") within the

facility.[2]  *Id.* ¶ 14.  Plaintiff is a native of Cuba, and claims not to speak or

---

[1]      In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of the plaintiff.  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).  It should be noted, however, that many if not most of plaintiff's allegations are sharply contested by the defendants.

[2]      Upstate is a maximum security prison comprised exclusively of SHU cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day.  *See Samuels v. Selsky*, No. 01 CIV. 8235, 2002 WL

understand English, or to be able to read or write in either English or

Spanish, his native language.  *See* Scott Decl. (Dkt. No. 44-3) Exh. C

(Transcript of Plaintiff's Deposition, held on January 31, 2008 and

hereinafter cited as "Messa Dep. at p. ___") at pp. 4-5; *see also* Complaint

(Dkt. No. 1), Exh. A-1.

Plaintiff's claims arise out of two separate incidents occurring at

Upstate on September 14 and 15, 2005.  The first of those incidents

happened when defendant Phillip Dabiew, a nurse at the facility,  escorted

by defendant Corrections Officer K. Eddy, attempted to dispense pain

medication to plaintiff.[3]  Complaint (Dkt. No. 1) ¶ 17; Dabiew Decl. (Dkt.

No. 44-7) ¶ 7.   While Dabiew and Eddy were stopped at his cell, plaintiff

reached his hand out of the slot in the cell door in what was perceived as

an attempt to grab Dabiew and pull his hand into the cell.[4]  Dabiew Decl.

_____

31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002).

[3]      This incident followed a conversation held on the prior day between Nurse Dabiew and Messa, in which plaintiff was told that he was being taken off Ultram, a prescription drug "indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time." PHYSICIAN'S DESK REFERENCE 2429 (2009).  Plaintiff was told that he would instead be required to take Ibuprofen or Tylenol for pain.  Dabiew Decl. (Dkt. No. 44-7) ¶ 6.  While this is nowhere explicitly stated in defendants' motion papers, the implication is that plaintiff was being taken off of Ultram, at least in part, because of his drug dependency prior to incarceration.  *Id.* ¶ 5.

[4]      Plaintiff alleges that he only reached out his hand to signal that he usually gets more medicine, and that Eddy "violently twisted" his fingers and Dabiew

(Dkt. No. 44-7) ¶ 8.  Eddy responded by unsuccessfully trying to push plaintiff's hand back into his cell.   *Id.* ¶¶ 10-11  Back-up officers were summoned and arrived soon thereafter.  *Id.*   A sergeant who was with the back-up officers directed Eddy to "apply force" to plaintiff's wrists with a baton; after this was done, plaintiff withdrew his hand. Dabiew Decl.  *Id.* ¶¶ 12-13.  As a result of the incident, plaintiff suffered lacerations on his hand, a sprained wrist and a broken finger, injuries that were treated by members of the medical staff who are not named as defendants in this case.   *Id.* ¶¶ 16-20 and Exhs. A and B; Buffham Decl. (Dkt. No. 44-8) ¶¶ 6-9, 12 and Exh. A.

The parties' version of the second incident, which occurred on the following day after plaintiff was removed from his cell for a urine test, vary significantly.  Complaint (Dkt. No. 1) ¶ 27.  According to defendants, while being escorted back to his cell by Corrections Officers H. Kemp and N. Guerin, following completion of the test, plaintiff began to shout toward the nurses' station.  Kemp Decl. (Dkt. No. 44-6) ¶ 5.  When Messa refused orders to return to his cell Corrections Sergeant Hyde, who was nearby, authorized the use of force to return plaintiff to his cell.  *Id.* ¶ 7; Hyde Decl.

---

slammed the metal door of the slot on his hand. Complaint (Dkt. No. 1) ¶ 19.

(Dkt. No. 44-5) ¶ 9.  Kemp and Guerin then physically took Messa by the arms and guided him to his cell door, where he went limp.  Hyde Decl. (Dkt. No. 44-5) ¶ 10-12; Kemp Decl. (Dkt. No. 44-6) ¶¶ 8-10.  The two corrections officers propped plaintiff up against a wall, where defendant Eddy applied a retention strap to Messa's hand restraints, and plaintiff was finally moved into his cell. Messa Decl. (Dkt. No. 44-5) ¶¶ 13-15; Kemp Decl. (Dkt. No. 44-6) ¶¶ 10-11.  After the officers exited plaintiff's cell, plaintiff put his hand through the hatch and the restraints and retention strap were removed.  Hyde Decl. (Dkt. No. 44-5) ¶¶ 16-17; Kemp Decl. (Dkt. No. 44-6) ¶¶ 11-12.

Plaintiff's version of the September 15, 2005 incident is markedly different.  Plaintiff maintains that at the time of the encounter he was attempting to get the attention of a translator in order to advise her as to what was happening to him.  Complaint (Dkt. No. 1) ¶¶ 27-29.  According to Messa, after he called out to the translator he was beaten unconscious by defendants Eddy, Kemp and Guerin.  *Id.* ¶ 30.

Following the September 15, 2005 incident plaintiff was examined by Deana Buffham, a registered nurse employed at Upstate.  Buffham Decl. (Dkt. No. 44-8) ¶¶ 1-4.  The purpose of that examination was to determine

what, if any, injuries were suffered by Messa as a result of the use of force. *Id.* ¶ 5.  Nurse Buffham did not observe any injuries not previously noted on plaintiff's medical records related to the September 14, 2005 injury. *Id.* ¶ 8.  Noting that the laceration to his finger that he sustained the previous day had reopened, Buffham applied gauze to plaintiff's wound. *Id.* ¶ 9.

On September 16, 2005, after having been transported to the Downstate Correctional Facility, plaintiff was examined and underwent x-rays at the Mount Vernon Hospital, confirming a fracture of his right index finger.  Buffham Decl. (Dkt. No. 44-8) Exh. A.

II.    <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on March 23, 2007 and was thereafter granted leave to proceed *in forma pauperis*. Dkts. No. 1, 4.  His complaint names seven defendants, including R.K. Woods, the superintendent at Upstate; J. Hyde, a corrections sergeant at the facility, N. Guerin, M. Kemp and K. Eddy, three corrections officers at Upstate; and, D. Buffham and P. Dabiew, two registered nurses employed at the facility.  Plaintiff's complaint *inter alia*, asserts claims of cruel and unusual punishment, based upon the use of excessive force and deliberate

7

indifference of medical officials to his resulting serious injuries.

On January 9, 2009, following joinder of issue and the close of discovery, all defendants with the exception of Corrections Officer K. Eddy moved for summary judgment dismissing plaintiff's claims against them on a variety of grounds.[5]  Dkt. No. 44.   In their motion, defendants argue that 1) plaintiff failed to exhaust his administrative remedies prior to filing suit with regard to the September 15, 2005 incident and Nurse Buffham's involvement in the matter; 2) the record fails to disclose the requisite personal involvement on the part of defendant Woods in the conduct giving rise to plaintiff's constitutional claims that would support a finding of liability against him; and 3) in any event, no reasonable fact finder could conclude that any of the defendants applied excessive force against him, or were deliberately indifferent to his serious medical needs.  Despite the passage of the deadline for doing so, plaintiff has failed to respond to defendants' motion, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

---

[5]       Defendants do not request summary judgment on behalf of defendant Eddy, who is no longer employed by the DOCS, acknowledging the existence of genuine issues of material fact surrounding the proprietary of Eddy's alleged use of force. Defendants' Memorandum (Dkt. No. 44-9) at p. 15, n.3.

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Summary Judgment Standard

       Summary judgment motions are governed by Rule 56 of the Federal

Rules of Civil Procedure.  Under that provision, summary judgment is

warranted when "the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of

Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir.

2004).  A fact is "material," for purposes of this inquiry, if it "might affect

the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at

248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d

549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in

dispute "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at

2510.

A party seeking summary judgment bears the initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v.*

*Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  The entry of summary

judgment is warranted only in the event of a finding that no reasonable

trier of fact could rule in favor of the non-moving party.  *See Building*

*Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d

Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.

Ct. at 2511 (summary judgment is appropriate only when "there can be but

one reasonable conclusion as to the verdict").

    B.    <u>Plaintiff's Failure to Oppose Defendants' Motion</u>

Before turning to the merits of plaintiff's claims, a threshold issue to

be addressed is the legal significance, if any, of his failure to oppose

defendants' summary judgment motion, and specifically whether that

failure automatically entitles defendants to dismissal of plaintiff's

complaint, based upon their motion.

Undeniably, *pro se* plaintiffs are entitled to special latitude when

defending against summary judgment motions.  *See Jemzura v. Public*

*Serv. Comm'n,* 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, C.J.)).

Despite this measure of deference, the failure of an unrepresented plaintiff

to oppose a summary judgment motion does not preclude the court from

deciding the motion.  *Robinson v. Delgado*, No. 96-CV-169, 1998 WL

11

278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J. & Hurd, M.J.); *Cotto v. Senkowski*, No. 95-CV-1733, 1997 WL 665551, at *1 (N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980 F. Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.).  Before such a motion can be granted under such circumstances, however, the court must review the motion to determine whether it is facially meritorious.  *See Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 231-32 (N.D.N.Y. 2001) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp. 2d 542, 545-46 (N.D.N.Y. 2000) (Kahn, J.); *see also* N.D.N.Y.L.R. 7.1(b)(3).

While a plaintiff's failure to properly oppose a defendant's motion does not assure that the motion, however lacking in merit, will be granted, that failure is not without consequences.  This court's rules require that "[a]ny motion for summary judgment shall contain a Statement of Material Facts setting forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue." N.D.N.Y.L.R. 7.1(a)(3).  By electing not to submit papers in opposition to their motion, plaintiff has left the facts set forth in defendants' Local Rule 7.1(a)(3) Statement unchallenged.  Courts in this district have routinely invoked Local Rule 7.1(a)(3) and its predecessor, Local Rule 7.1(f),

deeming facts set forth in a statement of material facts not in dispute to have been admitted based upon an opposing party's failure to properly respond to that statement.[6]  *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).

I recommend that the court follow this well-established practice and, notwithstanding Messa's *pro se* status, accept defendants' assertion of facts as set forth in their Local Rule 7.1(a)(3) Statement as uncontroverted, in light of plaintiff's failure to respond to that statement, when reviewing defendants' motion for facial sufficiency.

C.    Failure to Exhaust

On or about October 5, 2005 plaintiff filed a grievance, designated as No. UST-24951-05, regarding the September 14, 2005 alleged use of excessive force toward him.  Complaint (Dkt. No. 1) ¶ 40; Woods Decl. (Dkt. No. 44-4) Exh. D.  There is no indication that the grievance

---

[6]    According to Local Rule 7.1(a)(3), "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *See* N.D.N.Y.L.R. 7.1(a)(3) (Emphasis in original).

challenges defendant Buffham's care and treatment of plaintiff for the injuries resulting from the incident, nor is Buffham referenced anywhere in that grievance. *Id.* The grievance was denied, both at the initial level and by the superintendent, and plaintiff's subsequent appeal to the Central Office Review Committee ("CORC") resulted in a denial of his request for review, with clarification. *Id.*

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions. An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003,

at *5-6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into courtl[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record."  *Jones v. Bock,* 549 U.S. 199, 204, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 548 U.S. at 91-92, 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, any unexhausted claims are subject to dismissal. *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 94-95, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).  "Proper exhaustion" requires a

15

plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules."  *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).  While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson*, 380 F.3d at 697-98) (emphasis omitted).

New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by the DOCS, which is recognized as an "available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The IGP consists of a three-step review process.  First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the

incident.[7]  7 N.Y.C.R.R. § 701.5(a).  The IGRC, which is comprised of

inmates and facility employees, then issues a determination regarding the

grievance.  *Id.* §§ 701.4(b), 701.5(b).  If an appeal is filed, the

superintendent of the facility next reviews the IGRC's determination and

issues a decision.  *Id.* § 701.5(c).  The third level of the process affords

the inmate the right to appeal the superintendent's ruling to the CORC,

which makes the final administrative decision.  *Id.* § 701.5(d).  Ordinarily,

absent the finding of a basis to excuse non-compliance with this

prescribed process, only upon exhaustion of these three levels of review

may a prisoner seek relief pursuant to section 1983 in a federal court.

*Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter*

*alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284, at *3

(S.D.N.Y. Dec. 11, 2000)).

The record is equivocal as to whether plaintiff's grievance was

intended to incorporate both incidents in which excessive force was

allegedly utilized.  It is clear from the investigation conducted by prison

officials that the focus was upon the events of September 14, 2005

events.  Nonetheless, in a handwritten document entitled "Inmate

---

[7]      The IGP supervisor may waive the grievance timeliness requirement due
to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

Grievance Complaint" and bearing an alleged UST-24951-05, plaintiff specifically mentions events of the following day.  *See* Woods Decl. (Dkt. No. 44-4) Exh. D, pp. 50, 51.  Drawing all inferences and resolving all ambiguities in plaintiff's favor, I am unable to conclude that plaintiff did not properly apprise defendants, both procedurally and substantively, of his claim concerning the use of excessive force on September 15, 2005 and therefore recommend denial of the portion of defendants' motion which seeks dismissal of that claim for failure to exhaust.

A slightly different situation is presented with regard to defendant Buffham.  Undeniably, there is no specific requirement within the IGP or otherwise that an inmate identify all persons alleged to be responsible for the acts giving rise to his or her constitutional claims.  *Espinal v. Goord*, 558 F.3d 119, 126 (2d Cir. 2009).  A grievance, however, must place defendants on notice of what, substantively, is claimed in order to permit a proper investigation.  *Johnson*, 380 F.3d at 697 (quoting *Strong v. David*, 297 F.3d 646, 650 (2d Cir. 2002)).  The grievance filed by Messa relating to the September, 2005 events is plainly centered upon the alleged use of excessive force.  Plaintiff does not allege that Buffham was involved in the use of excessive force.  Moreover, nowhere within the grievance does the

18

plaintiff mention, nor did defendants' investigation address, any alleged

failure of Buffham to treat his injuries.  Indeed, plaintiff's grievance lists the

officers alleged to have been involved in the excessive use of force to

include certain corrections officers and Nurse Dabiew, but does not

mention Nurse Buffham.

The record establishes that on September 15 defendant Buffham

examined plaintiff, confirmed that he had no new injuries, and applied a

gauze pad to the laceration on his finger, which had reopened.  Buffham

Decl. (Dkt. No. 44-8) ¶ 8-9.  Additionally, defendant Buffham asserts that

she believes a reasonable nurse in her position would not believe that she

violated any federal rights of plaintiff in her care and treatment of him.  *Id.*

at ¶14.   Under these circumstances, I recommend that plaintiff's claims

against defendant Buffham be dismissed based upon plaintiff's failure to

exhaust his claims against her before filing suit.

D.   Defendant Woods' Personal Involvement

In their motion, defendants seek dismissal of plaintiff's claims

against Superintendent Woods.  In support of that application, defendants

assert that Woods was neither involved in any of the relevant conduct, nor

is there any other basis to conclude that he should be held accountable

19

for any constitutional deprivations resulting from the actions of other prison workers.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

It is apparent from his complaint that plaintiff predicates his claims against defendant Woods on his position as the superintendent at Upstate.  It is well established, however, that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. Culpability on the part of a supervisory official for a civil rights violation can be established in one of several ways, including when that individual 1)

has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring.  *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007)*, rev'd on other grounds sub. nom.*, *Ashcroft v. Iqbal*, 129 S. Ct. 2430 (May 26, 2009); *see also Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).   It should be noted, however, that vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability.  *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim . . . [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights.").

    Undeniably, defendant  Woods was involved after the fact in the

investigation of plaintiff's claims, including by reviewing and signing all of the use of force reports generated in connection with the September 14 and 15, 2005 incidents.  *See* Woods Decl. (Dkt. No. 44-4) ¶ 5.  Standing alone, however, such after the fact awareness does not suffice to establish liability on the part of the superintendent.  *See Poe v. Leonard*, 282 F.3d 123, 141 (2d Cir. 2002) ("[F]or a supervisor to be liable under section 1983 for his failure to inquire, he must first have been on notice that his subordinate was prone to commit some unconstitutional or unacceptable behavior.").

In his complaint, plaintiff suggests that defendant Woods was aware of Messa's prior difficulties with staff and argues that this provides ample basis for finding liability on the superintendent's part.  A review of those other matters, however, reflect that Messa did not previously assert use of excessive force by any of the named defendants in this case.  *See* Complaint (Dkt. No. 1) Exhs. A-1 through A-4.  Those complaints, which for purposes of this motion it should be assumed were brought to the superintendent's attention, relate to such matters as the loss of electricity in plaintiff's cell and the failure of medical personnel to provide desired medications and a requested back brace.  *See id.*  Given the record now

before the court, including plaintiff's previous written complaints, no reasonable fact finder could discern a basis to conclude that defendant Woods should be held accountable for the alleged use of excessive force against plaintiff, or the resulting failure of prison medical officials to properly treat his injuries.  I therefore recommend that this portion of defendants' motion be granted, and that all plaintiff's claims against Superintendent Woods be dismissed.

      E.    <u>Plaintiff's Excessive Force Claims</u>

The centerpiece of plaintiff's complaint in this action is his claim that corrections workers applied excessive force toward him on September 14, 2005, and again on the following day.  In their motion, defendants assert that the record does not support a finding of liability on the part of defendants Hyde, Guerin or Kemp with regard to the September 15, 2005 alleged use of excessive force, and similarly that Nurse Dabiew cannot be held accountable for the acts that occurred on September 14, 2005.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Estelle v.*

*Gamble*, 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also*

*Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986) (citing,

*inter alia*, *Estelle*).  While the Eighth Amendment does not mandate

comfortable prisons, neither does it tolerate inhumane treatment of those

in confinement; thus the conditions of an inmate's confinement are subject

to Eighth Amendment scrutiny.  *Farmer v. Brennan*, 511 U.S. 825, 832,

114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337,

349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment

must satisfy both an objective and subjective requirement – the conditions

must be "sufficiently serious" from an objective point of view, and the

plaintiff must demonstrate that prison officials acted subjectively with

"deliberate indifference".  *See Leach v. Dufrain,* 103 F. Supp. 2d at 546

(citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v.*

*Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998)

(Kahn, J. and Homer, M.J.); *see also, generally, Wilson*, 501 U.S. 294,

111 S. Ct. 2321.  Deliberate indifference exists if an official "knows of and

disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the

inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F.

Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

A plaintiff's constitutional right against cruel and unusual punishment

is violated by an "unnecessary and wanton infliction of pain." *Whitley,* 475

U.S. at 319, 106 S. Ct. at 1084 (citations and quotations omitted); *Griffen*

*v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999).  The lynchpin inquiry in

deciding claims of excessive force against prison officials is "whether force

was applied in a good-faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm."

*Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S. Ct. 995, 998 (1992) (applying

*Whitley* to all excessive force claims); *Whitley*, 475 U.S. at 320-21, 106 S.

Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)

(Friendly, J.), *cert. denied sub nom.*, *John v. Johnson*, 414 U.S. 1033, 94

S. Ct. 462 (1973)).  Analysis of claims of cruel and unusual punishment

requires both objective and subjective examinations.  *Hudson,* 503 U.S. at

8, 112 S. Ct. at 999; *Wilson v. Seiter*, 501 U.S. 294, 298-99, 111 S. Ct.

2321, 2324 (1991); *Griffen*, 193 F.3d at 91.

The objective prong of the inquiry is contextual, and relies upon

25

"contemporary standards of decency."  *Hudson*, 503 U.S. at 8 (quoting

*Estelle*, 429 U.S. at 103, 97 S. Ct. at 290.  When addressing this

component of an excessive force claim under the Eighth Amendment

calculus, the court can consider the extent of the injury suffered by the

inmate plaintiff.  While the absence of significant injury is certainly

relevant, it is not dispositive, as the defendants seemingly suggest.

*Hudson*, 503 U.S. at 7, 112 S. Ct. at 999.  The extent of an inmate's injury

is but one of the factors to be considered in determining a prison official's

use of force was "unnecessary and wanton"; courts should also consider

the need for force, whether the force was proportionate to the need, the

threat reasonably perceived by the officials, and what, if anything, the

officials did to limit their use of force.  *Whitley*, 475 U.S. at 321, 106 S. Ct.

at 1085 (citing *Johnson*, 481 F.2d at 1033).  Under *Hudson*, even if the

injuries suffered by a plaintiff "'were not permanent or severe'", a plaintiff

may still recover if "'the force used was unreasonable and excessive.'"

*Corselli v. Coughlin*, 842 F.2d 23, 26 (2d Cir. 1988) (quoting *Robinson v.*

*Via*, 821 F.2d 913, 924 (2d Cir.1987)).

  In support of their motion regarding the September 15, 2005 incident

defendants offer a videotape recorded on the day in question, as well as

categorical denials by two of the participants, Sergeant Hyde and

Corrections Officer Kemp, that the incident occurred as plaintiff suggests.

As defendants note, however, there is an approximately thirty-second time

lapse in the videotape.  This fact, particularly in the face of plaintiff's

allegation that he was beaten during that incident by defendants Eddy,

Kemp and Guerin "until he was rendered unconscience [sic]", *see*

Complaint (Dkt. No. 1) ¶ 30, counsel against the grant of summary

judgment, however tempting it may be to resolve the factual discrepancies

presented and find, based upon the somewhat convincing evidence now

before the court, that no reasonable fact finder could credit plaintiff's

version and find that he was beaten unconscious without reason.  I

therefore recommend denial of the portion of plaintiff's motion addressing

the September 15, 2005 incident.

Defendants also seek dismissal of plaintiff's excessive force claims,

related to the events of September 14, 2005, with respect to defendant

Dabiew.  That application is based upon defendants' assertion that plaintiff

has offered no evidence to substantiate defendant Dabiew's participation

in that incident.

Plaintiff expressly alleges in his complaint that "Nurse Dabiew

slammed the metal slot" onto his hands and fingers.  Complaint (Dkt. No.

1) ¶ 17.  Defendant Dabiew does not deny being a participant in the

events giving rise to plaintiff's excessive force claim based upon the

incidents occurring on September 14, 2005.  Defendant Dabiew does,

however, deny slamming the hatch door on plaintiff's hand, wrist, fingers

or arms and, implicitly, any role in the breaking of plaintiff's finger.  Dabiew

Decl. (Dkt. No. 44) ¶ 14.  Liability for excessive force, however, does not

merely extend to the person administering the force.  It is well established

that a person who witnesses an excessive force incident and is in a

position to avoid its use, but fails to do so, can similarly be exposed to

liability.  *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (citations

omitted) ("A law enforcement officer has an affirmative duty to intercede

on behalf of a citizen whose constitutional rights are being violated in his

presence by other officers."); *see also Cicio v. Graham*, No. 9:08-CV-534,

2009 WL 537534, at * 6 (N.D.N.Y. March 3, 2009) (Mordue, C.J. and

Peebles, M.J.).[8]  In this instance, resolving all ambiguities and drawing all

---

[8]        It should be noted that while case law makes clear that a law
enforcement officer is responsible for a failure to intervene in the use of excessive
force by another, it appears that the issue of whether a civilian employee of the DOCS
is held to the same standard has yet to be determined.  Determination of this issue on
this motion is unnecessary, however, in light of my finding that a material issue of fact
exists as to Dabiew's direct involvement in the use of force.

inferences in favor of the plaintiff, I recommend against a finding that no reasonable jury could find a basis for assessing liability on the part defendant Dabiew, based upon the September 14, 2005 incident.

### F.   Deliberate Medical Indifference

Like the use of excessive force, deliberate indifference to a prison inmate's serious medical needs runs afoul of the Eighth Amendment's prohibition against cruel and unusual punishment.  *Estelle*, 429 U.S. at 104, 97 S. Ct. at 291.

### 1.   Serious Medical Need

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must first allege a deprivation involving a medical need which is, in objective terms, "'sufficiently serious'".  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain'."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted).  A serious medical need can also exist where "'failure to treat a prisoner's condition could result in further

29

significant injury or the unnecessary and wanton infliction of pain'"; since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts. *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*, 143 F.3d at 702). Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or "'the existence of chronic and substantial pain.'" *Chance*, 143 F.3d at 701 (citation omitted); *LaFave v. Clinton County*, No. CIV. 9:00CV0774, 2002 WL 31309244, at *3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.) (citation omitted). In their motion, defendants do not assert that plaintiff's condition did not satisfy the serious medical need prong of the governing, deliberate indifference test.

## 2.    Deliberate Indifference

In addition to establishing the existence of a serious medical need, to prevail on an Eighth Amendment claim a plaintiff must also establish indifference to that condition on the part of one or more of the defendants. *Leach v. Dufrain*, 103 F. Supp. 2d 546. Deliberate indifference, in a

constitutional sense, exists if an official "knows of and disregards an

excessive risk to inmate health or safety; the official must both be aware

of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he [or she] must also draw the inference."

*Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp. 2d at

546 (citing *Farmer,* 511 U.S. at 837, 114 S. Ct. at 1979); *Waldo*, 1998 WL

713809, at *2 (same).

It should be noted that the Eighth Amendment does not afford

prisoners a right to medical treatment of their choosing; the question of

that diagnostic techniques and treatments should be administered to

address an inmate's medical condition is a "classic example of a matter

for medical judgment" and, accordingly, prison medical personnel are

vested with broad discretion to determine what method of care and

treatment to provide to their patients.  *Estelle*, 429 U.S. at 107, 97 S. Ct.

at 293; *Chance*, 143 F.3d at 703 (citation omitted); *Rosales v. Coughlin*,

10 F. Supp. 2d 261, 264 (W.D.N.Y. 1998) (citation omitted).

The record now before the court fails to substantiate plaintiff's claims

of deliberate indifference.  Plaintiff's deliberate indifference claims

implicate treatment received after both incidents.  Following the first,

occurring on September 14, 2005, once plaintiff allowed himself to be examined his finger was x-rayed, his cuts were treated and his broken finger was placed in a splint.  Dabiew Decl. (Dkt. No. 44-7) ¶¶ 16-17 and Exh. A.  When the x-ray revealed that plaintiff's finger was broken, plaintiff was examined by a medical doctor.  *Id.* ¶ 18 and Exh. A.  The record reveals that defendant Dabiew was not involved in providing medical care to plaintiff and that defendant Buffham was not involved in any care and treatment administered to plaintiff on September 14, 2005.  *See, e.g.* Dabiew Decl. (Dkt. No. 44-7) ¶ 21; Buffham Decl. (Dkt. No. 44-6) ¶¶ 3-8. There is therefore no basis to find liability on the part of any of the named defendants for the alleged failure of prison workers to provide proper medical care following the September 14, 2005 events.

Plaintiff's claims against Nurse Buffham arising out of a September 15, 2005 incident, in addition to being procedurally barred, are similarly without merit.  According to the record, Nurse Buffham examined plaintiff following that occurrence for the purpose of determining whether he had suffered any new injuries.  Buffham Decl. (Dkt. No. 44-6) ¶ 5.  Defendant Buffham found that plaintiff's finger wound had reopened, and provided him with a gauze pad to help stop the bleeding, but found no other injuries

32

or basis to believe that plaintiff required additional treatment.  *Id.* ¶¶ 8-9.

While the record substantiates plaintiff's claim that upon being transferred

to Downstate he received additional treatment, the records from Mt.

Vernon Hospital reveal x-rays showing a fracture and the application of a

splint – the same treatment provided at Upstate.[9]  *See* Complaint (Dkt.

No. 1) Exh. K-1.

Based upon the record now before the court, I conclude that no

reasonable fact finder could determine that defendant Buffham was

deliberately indifferent to plaintiff's serious medical needs.  Accordingly, I

recommend that defendants' motion seeking dismissal of plaintiff's claim

against that defendant be granted.

IV.   <u>SUMMARY AND CONCLUSION</u>

Plaintiff's claims in this action stem from the alleged application of

excessive force against him on September 14, 2005, and again on the

following day, as well as the failure of prison medical officials to properly

treat his resulting injuries.  The record now before the court fails to

---

[9]   It is also true that plaintiff also later complained of back and right knee pain allegedly resulting from the use of force.  *See* Complaint (Dkt. No. 1) Exh. J-1. There is, however, no substantiation of any diagnosis or treatment associated with those conditions in his medical records.  Nor is there any indication that plaintiff complained to Nurse Buffham concerning such injuries.

disclose any basis to conclude that defendant Woods was personally involved in the events complained of, or that there is another legally sufficient basis to hold him accountable for those actions.  The record also fails to disclose any internal administrative complaint by plaintiff regarding defendant Buffham's actions, but does sufficiently contain a grievance which reasonably apprised defendants of plaintiff's claims of excessive force and deliberate indifference claims otherwise arising out of the September 14 and 15, 2005 incidents.

Turning to the merits of plaintiff's claims, I discern no basis in the record to hold defendant Buffham accountable for the failure to provide adequate medical care and recommend that plaintiff's claims against her be dismissed.  I further recommend dismissal of plaintiff's medical indifference claims.  As to plaintiff's claims of excessive use of force arising out of the September 14 and 15, 2004 incidents, however, I recommend that defendants' motion be denied, and also against dismissal of plaintiff's claim against defendant Dabiew for his alleged involvement in the incident on September 14.

Based upon the foregoing it is hereby

RECOMMENDED, that defendants' motion for partial summary

34

judgment (Dkt. No. 44) be GRANTED, in part, and that all of plaintiff's

claims against defendants Woods and Buffham be DISMISSED, but that

defendants' motion otherwise be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT

TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. §

636(b)(1); Fed. R. Civ. P.  6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85

(2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

Report and Recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      July 30, 2009
            Syracuse, NY

35